JODY LAWLESS,

    Plaintiff,

  v.                                                                               Case No. 19-CV-772-SCD

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

# DECISION AND ORDER

      In 2015, Jody D. Lawless applied for Social Security benefits, alleging that she is unable to work primarily due to diabetic neuropathy that results in significant and chronic hand and foot pain. Following a hearing, an administrative law judge (ALJ) determined that Lawless remained capable of working notwithstanding his impairments. Lawless now seeks judicial review of that decision.

      Lawless argues that the ALJ improperly weighed the medical opinion of her primary doctor. The Commissioner contends that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. I agree with the Commissioner. Accordingly, his decision will be affirmed.

## BACKGROUND

      Lawless was born on January 28, 1979. R. 112.[1] She graduated high school in 2000. R. 373. After leaving high school, Lawless worked seasonally at an American Girl fulfillment

---

[1] The transcript is filed on the docket at ECF No. 12-2 to ECF No. 12-14.

center checking packages and repacking items when necessary. R. 116–17, 373, 419. She was also a fast-food worker at Subway, Dairy Queen, and McDonalds. *See* R. 115–16, 118, 356, 373, 419. Lawless stopped working in October 2014, and she hasn't worked since. *See* R. 372.

In 2015, Lawless applied for disability insurance benefits and supplemental security income from the Social Security Administration (SSA), alleging that she became disabled on October 24, 2014, her last day of work. R. 320–32, 372. She asserted that she was unable to work due to the following medical conditions: diabetes with neuropathy in both feet, feet pain, difficulty standing, carpal tunnel in her hands, tennis elbow, stomach pains, high blood pressure, a learning disability, and cervical cancer (in remission). R. 372. After her applications were denied at the local level, *see* R. 140–87, Lawless appeared before ALJ Chad Gendreau for an administrative hearing on February 13, 2018, R. 106–39. She was represented by an attorney. R. 108. At the time of the hearing, Lawless was thirty-eight years old, she weighed about 260 pounds (at around 5'4" tall), and she was living in a first-floor apartment with her boyfriend. R. 113. She had never been married, and she had no children. *Id.*

Lawless testified that she was unable to work due primarily to diabetic neuropathy, which caused numbness, tingling, and pain in her feet and hands. R. 119–20. These symptoms, according to Lawless, made it difficult for her to perform any activities that required prolonged standing or use of her hands. R. 123–24. For example, she had difficulty stirring while cooking, and she needed to take frequent breaks when doing dishes or washing clothes. *See* R. 123–24, 126–29. Because of these limitations, her boyfriend took care of most household chores. *See id.* Lawless estimated that she was able to stand for only ten to fifteen minutes before needing to rest—preferably lying down—for about twenty minutes. R. 125.

She also estimated that she could use her hands for only ten minutes before they started to hurt and feel cold and before experiencing tingling and numbness in her fingers. R. 125.

The ALJ also heard testimony from Merrill Cohen, a vocational expert (VE). According to Cohen, Lawless's hand packaging job at American Girl was performed at the medium exertional level, while her fast-food jobs were considered light work. R. 132. Cohen testified that a hypothetical person with Lawless's age, education, and work experience could not perform those jobs if she were restricted to light or sedentary work with additional nonexertional limitations. R. 132–36. However, that person could perform other jobs, including, for example: information clerk, inspector and hand packager, and counter clerk (at the light level); and document preparer, bench hand, and table worker (at the sedentary level). *Id.* Cohen testified that no jobs would be available if the hypothetical person needed to take three unscheduled ten-minute breaks each day or was limited to only occasional handling and fingering. R. 137–38. He further testified that employers would not tolerate an employee being off task more than about twelve percent of the workday or having more than one attendance infraction every two months. R. 136–37.

On June 20, 2018, the ALJ issued a decision applying the five-step evaluation process. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). R. 13–32. He determined that Lawless had not engaged in substantial gainful activity since her alleged onset date (October 24, 2014); Lawless suffered from two "severe" impairments: diabetes mellitus and obesity; Lawless did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Lawless had the residual functional capacity (RFC) to perform a restricted range of sedentary work; Lawless was unable to perform any past relevant work; and other jobs existed in significant numbers in the national

3

economy that Lawless could perform. R. 16–27. Based on those findings, the ALJ concluded that Lawless was not disabled. R. 27.

Lawless requested review of the ALJ's decision by the SSA's Appeals Council. R. 310–12. On March 22, 2019, the Appeals Council denied Lawless's request for review, R. 1–9, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Lawless filed this action on May 23, 2019, seeking judicial review of the Commissioner's decision. ECF No. 1. The matter was assigned to this court in April 2020. All parties have consented to magistrate-judge jurisdiction. *See* ECF Nos. 21, 22 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). The matter is now fully briefed and ready for disposition. *See* ECF Nos. 14, 18, 19.

## APPLICABLE LEGAL STANDARDS

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is

4

supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

Conversely, the ALJ's decision must be reversed "[i]f the evidence does not support the conclusion," *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)), and reviewing courts must remand "[a] decision that lacks adequate discussion of the issues," *Moore*, 743 F.3d at 1121 (citations omitted). Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*, 298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

In reviewing the record, this court "may not re-weigh the evidence or substitute its judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). Judicial review is limited to the rationales offered by the ALJ. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95

5

(1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## ANALYSIS

Lawless argues that the ALJ erred in weighing the opinion of her treating physician, Joseph Longo, D.O.

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)); *see also* SSR 96-2p, 1996 SSR LEXIS 9, at *1–4 (July 2, 1996). An opinion that is not entitled to controlling weight need not be rejected. Instead, the opinion is entitled to deference, and the ALJ must weigh it using several factors, including the length, nature, and extent of the claimant's relationship with the treating physician; the frequency of examination; whether the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1087 (E.D. Wis. 2009). Moreover, the ALJ must always give "good reasons" to support the weight he ultimately assigns to the treating physician's opinion. *See* §§ 404.1527(c)(2), 416.927(c)(2); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). Only "the most patently erroneous reasons for discounting a treating physician's assessment" require reversal. *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010) (citing *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001)).

Dr. Longo is Lawless's primary care physician. R. 129. He began treating Lawless in January 2013, seeing her for general health issues. *See* R. 378. On June 24, 2014, Dr. Longo filled out a Diabetes Mellitus Residual Functional Capacity Questionnaire. *See* R. 577–80. He noted that Lawless was diagnosed with Type II diabetes, which resulted in the following symptoms: fatigue, swelling, general malaise, abdominal pain, nausea/vomiting, and hyper/hypoglycemic attacks. R. 577. He further noted that emotional factors did not contribute to the severity of Lawless's symptoms and functional limitations. *Id.* With respect to Lawless's stress tolerance, Dr. Longo indicated that she was capable of low-stress jobs. R. 578.

Dr. Longo estimated that, in a competitive work situation, Lawless could walk one block without rest or severe pain, could sit for forty-five minutes at a time and less than two hours total in an eight-hour workday, and could stand for five minutes at a time and stand/walk for less than two hours in a workday. *Id.* Dr. Longo indicated that Lawless did not need to include periods of walking around during the workday but that she did need a job that permitted shifting positions at will from sitting, standing, or walking. R. 579. He also indicated that Lawless would need to take two or three unscheduled breaks each workday where she could sit quietly for five to ten minutes. *Id.* According to Dr. Longo, Lawless could occasionally (i.e., for 6–33% of the workday) lift ten pounds but never twenty pounds. *Id.* As for postural limitations, he stated that Lawless could rarely (i.e., for 1–5% of the workday) twist, stoop, and crouch/squat. *Id.* Dr. Longo indicated that his description of Lawless's symptoms and limitations was applicable for approximately the last six months. R. 580. The ALJ gave "some weight" to the opinions contained in the RFC Questionnaire. *See* R. 24.

7

On August 5, 2015, Dr. Longo provided Lawless a work excuse. *See* R. 539, 581. He indicated that Lawless could sit for thirty minutes at a time, five times per eight-hour workday; could stand sixty minutes at a time, one time per workday; and could occasionally lift. *Id.* According to Dr. Longo, Lawless likely would need unscheduled breaks and likely would be absent two or more days per month. *Id.* Overall, Dr. Longo indicated that Lawless could work two hours per day and ten hours per week. *Id.* The ALJ gave "little weight" to the opinions contained in the work excuse. *See* R. 24–25.

Lawless takes issue only with how the ALJ weighed the RFC Questionnaire. *See* ECF No. 14 at 10–19. She contends that the ALJ did not consider giving controlling weight to Dr. Longo's opinions. *See id.* at 12–15. She further contends that, even if controlling weight were not appropriate, the reasons the ALJ gave for giving the opinions some weight were insufficient, as he didn't consider the regulatory factors, he didn't evaluate Lawless's obesity in accordance with SSR 02-1p, and he didn't address the opined need for unscheduled breaks. *See id.* at 15–19. The ALJ's failure to properly weigh the opinions contained in the RFC Questionnaire was material, according to Lawless, because she would have been found disabled if those opinions had been adopted. *See id.* at 10–11.

The ALJ reasonably weighed Dr. Longo's opinions. After summarizing Lawless's RFC, the ALJ indicated that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." R. 21. The ALJ therefore did note the legal requirement for evaluating opinion evidence. Moreover, the ALJ reasonably applied those standards to each of the opinions contained in the RFC Questionnaire. The ALJ determined that Dr. Longo's opinions were not well-supported by or consistent with the record evidence; thus, they were not entitled to controlling weight. *See Hofslien v. Barnhart*, 439 F.3d 375, 376

(7th Cir. 2006) ("[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight."). The ALJ also provided specific reasons, consistent with the regulatory factors, for why he ultimately gave those opinions only some weight:

*First*, the ALJ found that "Dr. Longo's limitation to sedentary exertional work is consistent with [Lawless's] history of uncontrolled diabetes and her obesity." R. 24. Lawless does not challenge this finding. *See* ECF No. 19 at 6.

*Second*, the ALJ determined that Dr. Longo's "limitation to low stress jobs is not supported by [his diagnoses] and . . . is internally inconsistent with his earlier statement that emotional factors did not contribute to [Lawless's] functional limitations." *Id.*; *see* §§ 404.1527(c)(2), 416.927(c)(2); *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence."). Lawless did not address this limitation in her initial brief. In reply, she contends that the ALJ overlooked the fact that Dr. Longo was treating her for hypertension and that stressful situations can cause a rise in blood pressure. ECF No. 19 at 6. But Dr. Longo did not list that diagnosis on the Questionnaire. *See* R. 577. The ALJ cannot be criticized for purportedly failing to consider a condition Dr. Longo did not mention himself.

*Third*, the ALJ concluded that "Dr. Longo's restrictions regarding [Lawless's] ability to sit, stand or walk and the need to shift positions at will [were] not adequately explained" and were inconsistent with the evidence. R. 24. Specifically, the ALJ found these restrictions inconsistent with the physical findings and Lawless's reported symptom reduction from Gabapentin. The ALJ further noted that these restrictions were inconsistent with Lawless's reported activities, including her claimed ability to sit for two or three hours at a time, stand

9

for fifteen minutes at a time, and walk for five minutes at a time. The ALJ also pointed out that Lawless's providers didn't note that she appeared uncomfortable or needed to switch positions during their examinations.

Lawless attempts to contradict the ALJ's finding regarding inconsistency with the physical findings by citing treatment records that revealed she consistently complained of experiencing symptoms (mainly pain) from her medical conditions. *See* ECF No. 14 at 13–15. However, Lawless does not point to any material objective findings that the ALJ overlooked. The ALJ noted that, despite her alleged symptoms and some positive findings upon examination, Lawless had good pulses in her lower extremities, her distal pulses were full and equal, and she presented with a normal gait. *See* R. 23. Also, she never presented in distress. The ALJ reasonably determined that these exam findings were inconsistent with Dr. Longo's severe restrictions in sitting, standing, and walking.

Lawless also maintains that the lack of detail in Dr. Longo's treatment records is not a "good reason" for rejecting his opinions. *See* ECF No. 14 at 15. That may be true. *See Hermann v. Colvin*, 772 F.3d 1110, 1111 (7th Cir. 2014) (finding lack of support in doctor's "sparse treatment notes or by examination findings made by other physicians" insufficient grounds to disbelieve evidence from a treating source). But the ALJ here did not reject Dr. Longo's opinions because his treatment notes lacked detail. Rather, one of the reasons the ALJ gave for affording only some weight to Dr. Longo's opinions was that he did not adequately explain them—in other words, he simply checked off a form.[2] This reasoning is consistent with Social Security regulations. *See* §§ 404.1527(c)(3), 416.927(c)(3) ("The better

---

[2] Lawless asserts that the state agency physicians—whose opinions were afforded gave partial weight—lacked specificity supporting their opinions. *See* ECF No. 19 at 9–10. Not true. Both doctors briefly explained the bases for their opined functional limitations. *See* R. 149–50, 172–73.

an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

In her reply brief, Lawless criticizes the ALJ's reliance on improvement with medication and inconsistency with her self-reported activities. *See* ECF No. 19 at 7, 10–11. She claims that her pain persisted despite medication and that the two incidences the ALJ mentioned where she reported Gabapentin helped control her symptoms, *see* R. 493, 705, do not sufficiently undermine Dr. Longo's limitations to less than full-time work or the need to change positions. I generally agree. The fact that at times medication "helped" or "controlled" Lawless's diabetic neuropathy symptoms is not inconsistent with an inability to perform *sustained* work activity. Ultimately, however, this error is harmless, as the ALJ provided many other valid reasons for not adopting Dr. Longo's opinions. *See Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (citations omitted) ("Not all of the ALJ's reasons must be valid as long as *enough* of them are.").

As for daily activities, the ALJ reasonably noted that Dr. Longo's opinions were even more restrictive than Lawless's own account of her abilities. *See* R. 22, 24, 371–88. For example, while Lawless estimated that she could sit for two to three hours at a time, 388, Dr. Longo opined that she could sit for only forty-five minutes at a time and less than two hours *total* in a workday, R. 578. This inconsistency constituted a good reason for discounting the opinions contained in the RFC Questionnaires. *See* §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *see also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (finding that substantial evidence supported the ALJ's finding that a treating source

opinion "contradicts both the objective medical evidence and [the claimant's] own account of his abilities").

*Fourth*, the ALJ found that Dr. Longo did not "offer any explanation as to his opinion that [Lawless] should be limited to rare postural activities." R. 24. The ALJ also found that these restrictions were inconsistent with the evidence, including Lawless reporting no difficulty with personal care (i.e., "activities that necessarily involve postural changes") and the lack of treatment records noting impaired strength or range of motion in Lawless's back or extremities. *Id.* Lawless repeats her argument concerning lack of detail, but again, the ALJ rejected this portion of the Questionnaire because it lacked explanation, not because the underlying treatment notes were sparse. Lawless does not challenge the ALJ's other reasons for rejecting Dr. Longo's opined postural limitations.

*Finally*, the ALJ determined that Dr. Longo did not "adequately explain why he believed that [Lawless] would need extra breaks to go sit quietly" and that "this opinion is generally inconsistent with the nature of sedentary work that he proposes, which involves mostly sitting." *Id.* Lawless erroneously claims that the ALJ failed to address this limitation. *See* ECF No. 14 at 18. Confusingly, she also asserts that the ALJ's reason for rejecting this limitation is inaccurate because the ALJ indicated that Dr. Longo did not state "why or how many unscheduled breaks the claimant would need," when in fact Dr. Longo indicated that Lawless would need two or three such breaks per day. *See id.* at 19. She is mistaken. The ALJ provided that as a basis for rejecting an opinion contained in the Work Excuse (which is unchallenged by Lawless here), not the RFC Questionnaire. *See* R. 24–25.

\*\*\*

12

Furthermore, the ALJ plainly considered Lawless's obesity and its impact on her impairments. The ALJ found obesity to be a severe impairment at step two, R. 18, and he explicitly mentioned SSR 02-1p at step three when evaluating whether obesity, alone or in combination with Lawless's other impairments, medically equaled the criteria of a presumptively disabling impairment, R. 21. The ALJ also noted that Lawless "consistently presented as obese with BMI measurements as high as 49," R. 22, and he discussed at length Lawless's failure to follow through with treatment recommendations to lose weight by dieting and exercising, *see* R. 23. The ALJ's RFC assessment restricted Lawless to sedentary work with additional limitations, including the option to stand for ten minutes after every half hour of sitting and postural limitations. *See* R. 21–25. Lawless has not demonstrated that her obesity contributed to any limitations not accounted for this RFC or that the ALJ somehow forgot about her obesity when evaluating Dr. Longo's opinions.

## CONCLUSION

For all the foregoing reasons, I find that the ALJ did not commit reversible error in concluding that Lawless was not disabled as of October 24, 2014. Thus, the Commissioner's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this 18th day of May, 2020.

_____
STEPHEN C. DRIES
United States Magistrate Judge